PEOPLE v. HOWE.

2 T&C383
83 AD 233

*Embezzlement — indictment for — what does not constitute.*

An indictment charged defendant with embezzling a specified sum and converting the same to his own use. Evidence was given showing that defendant had received for premiums due an insurance company for which he procured applications, various sums, at various times from different individuals, a part of which he had paid over, and that the sum charged in the indictment was the balance due from him. The embezzlement of any particular sum or specified money was not shown. *Held*, that the charge was not sustained.

Defendant procured a number of applications, giving credit and taking notes for a portion of the premiums. The company, knowing this, issued the policies applied for and charged the premiums due to the account of defendant. Defendant collected from the policy-holders small sums at various times, until he had obtained the whole amount of the premiums. A part of this he had sent in various sums to the company, which sums had been received from him on account. *Held*, that the failure to pay the balance did not constitute embezzlement.

CERTIORARI to the general sessions of Yates county bringing up a record of conviction and bill of exceptions. The defendant was convicted of embezzlement, upon substantially the following state of facts:

The defendant was an agent for an insurance company to receive applications and premiums, advise the company thereof, and when the company approved of the risk and executed the policy, to deliver over such policy. The defendant sometimes received notes, and sometimes gave more or less credit for the premiums. He was to pay over the premiums to the company after they were received, in case the company accepted the risk.

The defendant had been acting as such agent for a number of years; the company had kept an account with him and he had furnished it security for any balance which might be due from him to the company. In November, 1870, a committee on the part of the company had a settlement with the defendant, at which it seems the defendant was found indebted to the company in a considerable balance, and on that occasion, certain notes, signed by one Davis, apparently for the benefit of the defendant, were given to and accepted by the company in payment of the balance then due, except a small amount of about five dollars.

Thereupon a new arrangement was entered into between the company and the defendant, under which it was agreed that the defendant should take applications and forward them to the company with the money for the premium with each application, and the company was to underwrite the policies applied for if it saw fit, if not, to return the amount of the premium.

The compensation of the defendant for doing the business was to be twenty per cent on the amount of the premiums, which he was to deduct from the premiums. In the winter of 1871, the defendant procured a number of applications for insurance with the company, giving credit in some cases for the premiums, in other cases taking notes. These applications amounted to thirty-one, in all, and were forwarded by the defendant to the company. With these applications the defendant forwarded a draft for $30. The letter accompanying the applications and draft contained the following postscript: "P. S. I expected to have forwarded at least $100, at this time, but failed to get it, so I forward what I have. Shall be forwarding more immediately after first of April, as I shall then pass over territory again."

The letter also requested the company to forward the accepted policies to the applicant as fast as the defendant sent forward the money.

The letter did not state, nor did it appear in the case from whom the $30, covered by the draft remitted, had been received, or to what policies it was applicable. Soon after the receipt of these applications and the draft, the directors of the company sent their general agent to the defendant with some general instructions to collect the money on these applications, or to take away Howe's agency. The agent applied to the defendant for the money on all these applications, but the defendant claimed it had not been fully collected, and the case does not show how much of it had then been collected, and does not show that any of it had been collected, except by the general admission of the defendant to the effect that a part of it had been collected.

At that time, the balance which would be due the company for the amount of premiums on the whole thirty-one policies, was agreed upon and stated to be, less the defendant's commissions and a returned premium, $314.86, and also a balance on previous business, of $25.24.

An arrangement was subsequently made by the company, by

which it was agreed that the company should issue the policies in question, and charge the premiums over to the defendant.

This was done, and an account current of the transactions between the defendant and the company kept and rendered. And the defendant sent a draft to the company on account of premiums on those applications which was receipted as " upon his account with this company."

Sometime in August, 1871, the defendant admitted that he had received the full amount of premiums, but had used the unpaid balance to pay on a mortgage.

The premiums received by the defendant were received in different amounts from different persons, at different times, in different places, and upon different accounts. Besides the draft for $30, remitted with the applications, the defendant had remitted by drafts, $50, in a gross sum, which was so received and credited on account.

The only direct evidence of the receipt of money by the defendant for premiums on these applications was of the receipt of $31.90, in three different sums, from three different parties, but whether paid at the times of their respective applications for insurance, or afterwards did not appear. The prosecution also proved the receipt of one note by the defendant for one of these premiums, but whether the note had been paid or not did not appear otherwise than from the general admission of the defendant in August, 1871, that he had received the premiums.

The indictment contained one count charging the defendant with receiving and taking into his possession the sum of $238.08 [that being the balance of account claimed to be due from the defendant to the insurance company], and feloniously taking, embezzling, carrying the same away and converting the same to his own use.

*H. Struble*, district attorney, for the people.

*Ralph T. Wood*, for defendant.

TALCOTT, J. The conviction in this case seems to have taken place under an entire misconception as to what constitutes the crime of embezzlement, the mode in which it is to be charged, and the evidence by which it is to be established.

The defendant was evidently indicted not for embezzling any specific thing or sum, but for embezzling a balance of account,

namely, the amount due to the insurance company on a net balance, consisting of numerous smaller sums of money, received at different times and in different places, from different persons and on different accounts. This will not answer. Each specific act of embezzlement is a specific offense, and must be so charged with all necessary certainty and particularity, to enable the defendant to understand and prepare to meet the specific charge. It may be that if a servant should have, at one time, in his own possession, a gross sum belonging to his master, though received from different parties, at different times, and, having it all in possession, should then form the design to feloniously appropriate the gross sum, and do so, he might be indicted for embezzlement of the gross sum without specifying the sources from which received, or in any way undertaking to particularize the various amounts of which it was composed. It is sufficient to say that the evidence in the case at bar makes out no such case. The principles applicable to such an indictment are stated by Mr. Bishop, in his very elaborate and learned work on Criminal Law, as follows: " On common-law principles the indictment, under the statute, must set out, specifically, some articles of property embezzled. An allegation that the prisoner took and received on account of his master divers sums of money, to wit: the sum of £10, and afterward embezzled the same, not being sufficient. In other words, the indictment must describe, according to the fact, some of the identical goods or money, so the evidence must establish the embezzlement of the specific articles described." 2 Bish. Crim. Law, § 374 and cases cited.

Certain statutory provisions have been made in England with a view to simplify the forms of indictment in such cases. See a reference to these statutes, 2 Bish., § 375, note 1. But, as stated by the author on common-law principles, a statute providing a simpler form of indictment does not change the nature of the offense, or diminish the quantity or modify the species of proof, and even now, in England, it will not suffice to show a general deficiency in account. Some specific sum must be proved to have been embezzled, the same as in larceny, some particular article must be proved to have been stolen. The Course adopted in the case at bar, subjects a party to be required to meet any number of distinct offenses under one count in the indictment, and to a conviction, if any one, of a hundred distinct offenses sought to be proved should be found to be established.

Therefore the counsel for the defendant was authorized to object, as he did, to the evidence tending to prove the receipt of various sums of money from various persons, at different times, and upon different accounts. The specific offense of embezzling the particular sum received from either of the witnesses, had not been charged in the indictment, nor was any kind of description or identification of any money embezzled attempted to be given. But a fundamental error, touching the merits of the case, which was committed in the court below, was in the various rulings, by which it was held that the defendant could be convicted of embezzlement on the facts as they appeared on the part of the prosecution. It is manifest that it was not understood by the parties, that the specific and identical money received by the defendant, from time to time, from the various insured parties was to be handed over to the company, but it was to, and did, become a matter of account, and the prosecution is in fact for not paying over a balance of account. This is not the object, nor within the intent of the statutes, against embezzlement. Those statutes were passed to remedy a defect in the common law as regards the crime of larceny, it being held that a larceny must include a trespass, either actual or constructive, consequently if the property or money misappropriated came to the possession of a servant lawfully, in general, the subsequent misappropriation of it could only be treated as a breach of trust, and not punishable criminally. And it was to avoid the difficulty arising out of the lawful possession of the party sought to be punished, which prevented a conviction for larceny, that the new offense was created. The same title and right to receive the identical money must exist, in order to a conviction for embezzlement, as in the case of larceny. It has, therefore, been held, where the party receiving the money has a right to mix it with his own, being accountable for a balance, as in the case of an auctioneer (*Commonwealth* v. *Stearns*, 2 Metc. 343), or a newspaper collector (*Commonwealth* v. *Sibly*, 11 id. 64), that an indictment for embezzlement does not lie upon a misappropriation. However morally wrong it may be for a party to use money for his own benefit, which he is bound to pay over to another, it is not a criminal offense so long as it is a mere debt, no matter of how sacred a nature.

Since the facts in this case transpired, and in 1873 the legislature passed an act relative to the defalcations of agents of insurance companies, which, it may have been supposed, would render such

agents liable to be proceeded against criminally for not paying over a balance of account to their principals. Whether it will have such an effect it will be time enough to determine when the question arises.

The questions discussed hereinbefore were sufficiently presented, in various ways, by the exceptions taken on the trial; and we are of the opinion that it is clear the conviction cannot be sustained, and that the defendant cannot lawfully be convicted on the indictment and the evidence.

The conviction is therefore reversed, and the proceedings remitted to the court of general sessions of Yates county, with directions to discharge the prisoner.

*Ordered accordingly.*